UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Newport News Division

COREY MOODY,

                  Plaintiff,

v.                                     Civil No. 4:14cv99

THE CITY OF NEWPORT NEWS,
VIRGINIA, JAMES D. FOX,
IN HIS OFFICIAL CAPACITY,
RICHARD W. MYERS, IN HIS
OFFICIAL CAPACITY, DANIELLE
HOLLANDSWORTH, INDIVIDUALLY,
RUSSEL TINSLEY, INDIVIDUALLY,
RANDY GIBSON, INDIVIDUALLY,
and RYAN NORRIS, INDIVIDUALLY,

                  Defendants.

## AMENDED OPINION AND ORDER[*]

This matter is before the Court on a Motion to Dismiss, ECF No. 6, filed by Defendants, The City of Newport News, Virginia ("the City"), James D. Fox ("Chief Fox"), and Richard W. Myers ("Chief Myers" or, collectively with the City and Chief Fox, "City Defendants"). After examining the briefs and the record, the Court determines that oral argument is unnecessary because the facts and legal contentions are adequately presented and

---

[*] The instant "Amended Opinion and Order" replaces the Opinion and Order entered in this case on November 4, 2014, ECF No. 33. This Amended Opinion and Order corrects a scrivener's error in the final sentence of the first full paragraph of page 60 of the Court's November 4, 2014 Opinion and Order by replacing the phrase "failure-to-train" with the phrase "failure-to-supervise." However, **the Court's ruling in its November 4, 2014 Opinion and Order, ECF No. 33, remains in full effect.**

oral argument would not aid in the decisional process.  Fed. R. Civ. P. 78(b); E.D. Va. Loc. R. 7(J).  For the reasons set forth below, City Defendants' Motion to Dismiss is **GRANTED IN PART** and **DENIED IN PART**.

## I. FACTUAL AND PROCEDURAL HISTORY[1]

### A. Background

### 1. The Parties

Corey Moody ("Plaintiff") is a resident of the Commonwealth of Virginia.  Complaint ¶ 5, ECF No.1.  The City is a duly incorporated municipality of the Commonwealth of Virginia.  The City "is the legal entity responsible for . . . the Newport News Police Department" (the "Police Department").  Id. ¶ 10.  Chief Fox is a resident of the Commonwealth of Virginia and was "the Chief of Police of the Newport News Police Department," employed by the City or the Newport News Police Department "until September, 2013.  Id. ¶ 12.  According to Plaintiff, as chief of police, Chief Fox "both exercised and delegated his municipal

---

[1] The facts of this case, drawn from Plaintiff's Complaint, are assumed true for the purpose of deciding the motion currently before the Court.  See Burbach Broadcasting Co. of Del. v. Elkins Radio Corp., 278 F. 3d 401, 406 (4th Cir. 2002).  The facts recited here are not to be considered factual findings for any purpose other than consideration of the pending motion.  See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (observing that, "when ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint"); Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009) ("[I]n evaluating a Rule 12(b)(6) motion to dismiss, a court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff in weighing the legal sufficiency of the complaint.").

final decision making power to the Professional Standards Division" ("PSD"). Id. ¶ 13. Chief Myers is a resident of the Commonwealth of Virginia, is currently the chief of police of the Police Department, and has served in that capacity since January 2014. See id. ¶ 14. According to Plaintiff, as chief of police, Chief Myers "both exercised and delegated his municipal final decision making power to the [PSD]." Id. ¶ 15. Through the delegation of final decision making power to the PSD, Plaintiff alleges that the PSD makes final policy decisions "with respect to reviewing police misconduct" that "create liability" for City Defendants. Id. ¶ 70.

Ryan Norris ("Officer Norris") is a resident of the Commonwealth of Virginia, and the City "and/or" the Police Department employed him as a law enforcement officer. Id. ¶ 6. Danielle Hollandsworth ("Officer Hollandsworth") is a resident of the Commonwealth of Virginia, and the City "and/or" the Police Department employed her as a law enforcement officer. Id. ¶ 7. Russel Tinsley ("Officer Tinsley") is a resident of the Commonwealth of Virginia, and the City "and/or" the Police Department employed him as a law enforcement officer. Id. ¶ 8. Randy Gibson ("Officer Gibson" or, collectively with Officers Norris, Hollandsworth, and Tinsley, "Individual Defendants") is a resident of the Commonwealth of Virginia, and the City "and/or" the Police Department employed him as a law enforcement

3

officer. Id. ¶ 9. Plaintiff claims that Chiefs Fox and Myers "trained and supervised" Individual Defendants. Id. ¶ 16.

### 2. The December 12, 2012 Incident and Investigation

On December 12, 2012, at around 7:00 p.m., Plaintiff alleges that he "was lawfully operating a vehicle, registered to his mother, upon the public roadway." Id. ¶ 21. At that time, according to Plaintiff, he was unarmed, had not consumed alcohol or illicit substances that evening, and did not have drugs in the vehicle. Id. ¶¶ 27-28. However, purportedly unbeknownst to Plaintiff, a federal warrant for his arrest had been issued. Id. ¶ 23. Although Plaintiff had been charged with violations of state laws and those charges were pending resolution on December 12, 2012, he asserts that he "had attended all hearings and court appearances associated with such charges." Id. ¶ 24.

Officers Hollandsworth and Tinsley, in an unmarked vehicle, pulled over Plaintiff's vehicle "on the I-664 overpass near 35th [S]treet and Madison Avenue in Newport News, Virginia." Id. ¶ 22. In addition, Officers Gibson and Norris responded to the scene of the stop. Id. ¶ 26.

After Plaintiff pulled over to the side of the road, Officers Hollandsworth and Tinsley approached the vehicle Plaintiff was operating. Id. ¶ 29. Plaintiff alleges that at least one officer, Officer Tinsley, see id. ¶ 38, "had already

4

drawn his gun and pointed the gun at [Plaintiff]." Id. ¶ 30. Officer Tinsley asked Officer Hollandsworth "Is this the guy?", and Officer Hollandsworth "replied affirmatively." Id. ¶¶ 31, 38.

According to Plaintiff, Officer Tinsley then "instructed Plaintiff to place his hands outside the window of the car." Id. ¶¶ 32, 38. Plaintiff alleges that he "repeatedly asked why he was being pulled over" and about "the nature of the charges against him, and made "other inquiries" into the "unexplained, aggressive encounter" with the officers. Id. ¶ 33. However, the officers did not inform Plaintiff "as to the purpose for the [o]fficers' actions." Id. ¶ 34. Officer Tinsley began to handcuff Plaintiff, to which Plaintiff "protested asking why he was being arrested." Id. ¶¶ 35, 38. Plaintiff claims that Officer Tinsley then "began pulling [Plaintiff's] arm and attempting to pull [Plaintiff] through the open window out of the vehicle" and "began using profanity and yelling statements such as, 'I will blow your head off.'" Id. ¶¶ 36-38.

Plaintiff alleges that Officer Hollandsworth then "fired upon the vehicle from her position at the rear passenger side of the vehicle." Id. ¶ 41. "Fearing for his life, [Plaintiff] attempted to put the vehicle in neutral." Id. ¶ 42. According to Plaintiff, "one or more of the officers fired at least an additional six rounds into the vehicle immediately after or

simultaneously with Officer Hollandsworth's shots," id. ¶ 43, striking the vehicle with "shots from multiple directions." Plaintiff attempted to take cover from the rounds "by leaning over to the passenger side of the car as the car rolled forward in neutral." Id. ¶ 45. "[T]wo of the bullets fired by the [o]fficers struck [Plaintiff] in the leg and in his back, and the bullet that struck Plaintiff's back "severed his spinal cord causing him permanent paralysis." Id. ¶ 46-47. "Officer Tinsley was injured in the incident by shrapnel or glass from the other officers' shots." Id. ¶ 48. Plaintiff asserts that "[a]fter the shooting subsided and the vehicle coasted to a stop, an additional unidentified officer dragged [Plaintiff] out of the vehicle, pointed a gun at his head, and yelled at him to tell the officers where the gun was located." Id. ¶ 49. According to Plaintiff, at no time during the encounter did Plaintiff "reach[] into a console or glove box, into his coat, or [make] any other furtive motion." Id. ¶ 39.[2] Plaintiff claims that "[a]ll officers engaged in the unprovoked attack. None of the officers took any steps to protect Plaintiff against

---

[2]In contrast to the Complaint, the 2012 PSD Annual Report states that Plaintiff made furtive movements and that those furtive movements caused detectives to fire their weapons at Plaintiff. See Compl. Ex. D at 6, ECF No. 1-4. City Defendants argue that the Court must accept the facts as stated in the 2012 PSD Annual Report, attached to the Complaint as Exhibit D, rather than the bare allegations in Plaintiff's Complaint. However, for the reasons discussed below, the Court concludes that, for the purposes of resolving this motion, the statements in Exhibit D do not prevail over the allegations in the Complaint.

the other officers' use of excessive force, despite being in a position and having a duty to do so." Id. ¶ 54.

Plaintiff alleges that the actions of the Individual Defendants "were done pursuant to the preexisting and ongoing deliberately indifferent official custom, practice, decisions, policy, training, and supervision" of the City Defendants and "were done . . . intentionally . . . in disregard for Plaintiff's federally protected rights." See id. ¶ 65.

Following the shooting, the Police Department "searched both the vehicle and the suspect thoroughly after the incident," but found no weapon or drugs on Plaintiff or in the vehicle. Id. ¶¶ 51-52. "At the time of the incident, the [Police Department] initially claimed in statements to the media that there was an exchange of gunfire between police and [Plaintiff]," Id. ¶ 50; however, Plaintiff asserts that, one week after the incident, the Police Department admitted that "it did not appear that the suspect fired a weapon." Id. ¶ 53.

The PSD, a division of the Police Department "tasked with internal investigation of use of police force," "purported to undertake an investigation of the use of force against [Plaintiff]." Id. ¶¶ 57, 59. Plaintiff alleges that the PSD did not contact him to participate in the investigation. Id. ¶ 60. According to Plaintiff, "[t]he [PSD] failed to meaningfully

investigate the issue of use of excessive force, including failing to contact [Plaintiff] for an interview. Id. ¶ 69.

The PSD publishes findings on internal investigations on the "use of police force" in an annual report. See id. ¶¶ 57-58. The PSD did not announce a finding on the Individual Defendants' use of force against Plaintiff in the 2012 PSD Annual Report, published on April 4, 2013, but indicated that the "investigation was still pending." Id. ¶¶ 61-62. The PSD also did not announce a finding on the Individual Defendants' use of force against Plaintiff in the 2013 PSD Annual Report, published on March 6, 2014. Id. ¶ 63. According to Plaintiff, the PSD's "findings were not released in a comparable report and lack of publication exhibits intent to conceal the investigation of the matters alleged in [the] Complaint." Id. ¶ 64. Plaintiff alleges that the actions of the PSD "were done pursuant to the preexisting and ongoing deliberately indifferent official custom, practice, decisions, policy, training, and supervision" of the City Defendants and "were done . . . intentionally . . . in disregard for Plaintiff's federally protected rights." See id. ¶ 65.

### 3. Broader Allegations Against City Defendants

In addition to the facts of Plaintiff's particular case, Plaintiff alleges that the PSD "routinely ratifies the malicious collusive conduct and unconstitutional actions of the police by

failing to contact victims of police force and otherwise ignoring serious complaints of excessive force." Id. ¶ 68. Also, Plaintiff claims that "in the period before and since this event, the [PSD] has unfounded other complaints of excessive force by law enforcement." Id. ¶ 72. Specifically, on February 18, 2007, while Chief Fox served as chief of police, officers of the Police department "shot and killed unarmed Robert L. Harper during an attempt by six officers to arrest him after his bond was revoked." Id. ¶ 73. Plaintiff alleges that Officer Tinsley was involved in that incident and "has been the subject of complaints and investigations both prior to and since this event." Id. ¶ 74. According to Plaintiff, the PSD's actions create liability for City Defendants. Id. ¶ 70.

Plaintiff further alleges that the City Defendants "with deliberate indifference to the rights of citizens to be free from excessive force by police," have "encouraged" and "ratified" "a dangerous environment of police brutality" by "ongoingly failing to properly or neutrally investigate citizen complaints of excessive force" and "tolerating, encouraging, and permitting collusive statements by involved officers in such situations." Id. ¶ 66. Likewise, Plaintiff alleges that the decisions of the PSD are "further evidence of the ongoing deliberately indifferent custom . . . [and] policy . . . of the

[City Defendants] of tolerating and encouraging lawlessness and disregard for federal rights." Id. ¶ 71.

With respect to the City Defendants, Plaintiff also asserts that City Defendants have a policy of permitting officers to use excessive force; failing to supervise police officers; and failing to train police officers. Id. ¶ 67. According to Plaintiff, City Defendants have also ratified and encouraged a "dangerous environment of police brutality" by "failing to adequately punish unconstitutional uses of force." Id. ¶ 66.

Similarly, Plaintiff claims that City Defendants have shown deliberate indifference to Plaintiff's constitutional rights by failing to train their officers and failing to supervise their officers in the "appropriate constitutional limits on the use of force, knowing that these members of law enforcement therefore pose a significant risk of injury to the public." Id. ¶ 67. In particular, according to Plaintiff,

> [i]n light of the duties . . . of those police officers that participate in arrests[,] . . . the need for specialized training and supervision is so obvious, and the inadequacy of the training and/or supervision is so likely to result in the violation of constitutional and federal rights[,] that the failure to provide such specialized training and supervision is deliberately indifferent to those rights.

Id. ¶ 119.

### B. Procedural History

On July 31, 2014, Plaintiff filed his Complaint in this Court alleging that the City and Individual Defendants deprived

10

Plaintiff of his constitutional rights in violation of 42 U.S.C § 1983 ("Section 1983"). ECF No. 1. Plaintiff has sued Officers Hollandsworth, Tinsley, Gibson, and Norris in their individual capacities. Id. ¶¶ 6-9. Plaintiff has also sued Chiefs Fox and Myers, in their official capacities, and the City. Id. ¶¶ 10, 12, 14. On August 29, 2014, City Defendants filed a Motion to Dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). ECF No. 6. In their Memorandum in Support of the Motion to Dismiss, City Defendants ask the Court to dismiss the claims against Chiefs Fox and Myers because Plaintiff seeks monetary damages, rather than injunctive relief, from those Defendants only in their official capacity, rendering those claims duplicative of the claim against the City. Mem. Supp. Mot. to Dismiss at 4, ECF No. 7. City Defendants also contend that the Complaint fails to state a claim upon which relief can be granted against the City because the Complaint does not provide a basis for holding the City liable for the actions of the Individual Defendants. See id. at 5. In support of their motion, City Defendants assert that, to the extent of any inconsistency, the Court should consider the factual allegations in the exhibits attached to the Complaint to control over the Complaint's factual allegations. Id. at 6.

On September 9, 2014, Plaintiff filed a Brief in Opposition to City Defendants' Motion to Dismiss. ECF No. 8. Plaintiff

contends that he has stated a claim against City Defendants because: Plaintiff has identified the PSD as a final delegated policy decision maker and alleged a policy of failing to adequately investigate and punish misconduct, see id. at 4-5; Plaintiff has alleged that City Defendants failed to adequately train their officers in the use of force, see id. at 5-7; Plaintiff has alleged that the City Defendants failed to adequately supervise their officers through "failing to investigate claims of excessive force," id. at 8; and Plaintiff has alleged, through facts "similar to those made in support of the claim pursuant to a policy," that City Defendants had a practice of failing to properly investigate officers' use of excessive force "persistent and widespread" enough to constitute a "custom or usage with the force of law," id. at 9.  In addition, Plaintiff "concedes that there is no longer a need to sue Defendant[] Myers or Defendant Fox in their personal capacity if the Defendant City remains a party to the suit." Id. at 10.  Lastly, Plaintiff requests that the Court grant him leave to amend the Complaint if the Court determines that the Complaint does not sufficiently state a claim.  Id.

On September 15, 2014, City Defendants filed a Rebuttal Memorandum in Support of the Motion to Dismiss.  ECF No. 9.  In response to Plaintiff's claim that he adequately alleged municipal liability based on a policy or custom, City Defendants

contend that the "failure to investigate or take disciplinary action following a subject incident cannot support a claim of municipal liability, because an after-the-fact inadequate investigation or discipline could not have been the legal cause of [P]laintiff's injury." Id. at 4. City Defendants further argue that Plaintiff's allegations with respect to the City Defendants' failure to train or supervise the Individual Defendants are too conclusory to state a claim upon which relief can be granted. See id. at 5-7.

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) permits dismissal of a complaint, or a claim within a complaint, based on the plaintiff's "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A motion to dismiss pursuant to Rule 12(b)(6) must be read in conjunction with Rule 8(a)(2), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), so as to "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests,'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)) (omission in original). The United States Supreme Court has interpreted the pleading standard set forth in Rule 8(a) as requiring that a complaint include enough facts for the claim to be "plausible on

13

its face" and thereby "raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Id. at 555, 570 (internal citations omitted).   The plausibility requirement is "not akin to a 'probability requirement,' but it asks for more than a sheer possibility" that a defendant is liable. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 556).   In other words, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 663.

Because a Rule 12(b)(6) motion tests the sufficiency of a complaint without resolving factual disputes, a district court "'must accept as true all of the factual allegations contained in the complaint' and 'draw all reasonable inferences in favor of the plaintiff.'"   Kensington Volunteer Fire Dep't v. Montgomery County, 684 F.3d 462, 467 (4th Cir. 2012) (quoting E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 440 (4th Cir. 2011)).   Accordingly, "'Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations.'"   Twombly, 550 U.S. at 555 (quoting Neitzke v. Williams, 490 U.S. 319, 327 (1989)) (omission in original).   A complaint may therefore survive a motion to dismiss "even if it appears 'that a recovery is very

14

remote and unlikely.'" Id. (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).

In considering a typical Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief may be granted, the "court evaluates the complaint in its entirety, as well as documents attached or incorporated into the complaint." Kolon Indus., 637 F.3d at 448 (citing Sec'y of State for Defence v. Trimble Navigation Ltd., 484 F.3d 700, 705 (4th Cir. 2007); Phillips v. LCI Int'l Inc., 190 F.3d 609, 618 (4th Cir. 1999)). A district court "may consider documents attached to the complaint or the motion to dismiss 'so long as they are integral to the complaint and authentic.'" Kensington Volunteer Fire Dep't, 684 F.3d at 467 (quoting Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009)).

### III. DISCUSSION

The crux of the dispute between Plaintiff and City Defendants with respect to this motion is the extent to which Plaintiff has stated a claim against City Defendants under the rigorous standards for municipal liability established in Monell. In light of Plaintiff's concession that the Court should dismiss the claims against Chiefs Myers and Fox as duplicative of Plaintiff's claim against the City, Pl.'s Br. Opp'n Defs.' Mot. to Dismiss at 10, the Court will **GRANT** City

Defendants' motion with respect to the claims against Chiefs Myers and Fox.

Plaintiff contends that he has alleged sufficient facts to demonstrate municipal liability on a number of bases, including: (1) pursuant to municipal policy, both expressly and through the decision of a person with final policy making authority; (2) failure to train officers in the use of force; (3) failure to supervise officers' use of force; and (4) through a practice of failing to investigate police officers' use of force that is so widespread as to constitute a custom with the force of law.  See id. at 4-9.  Before turning to the merits of the instant motion, the Court will determine the extent to which it should consider the exhibits attached to the Complaint in resolving this motion. The Court will then set forth the general requirements for establishing municipal liability under Section 1983. Thereafter, the Court will address, in turn, the extent to which Plaintiff has alleged sufficient facts to state a claim against the City under each of Plaintiff's purported theories of municipal liability.

### A. The Exhibits to the Complaint

First, the Court considers whether the factual statements in the exhibits Plaintiff has attached to the Complaint control over the factual allegations contained in the Complaint itself. For the reasons stated below, the Court holds that the

statements in the exhibits <u>do not</u> control to the extent they are inconsistent with the factual allegations in the Complaint.

City Defendants correctly state the general rule regarding the relationship between an exhibit and the complaint. Under Federal Rule of Civil Procedure 10(c), "[a] copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." As the Fourth Circuit has stated, "[i]n the event of conflict between the bare allegations of the complaint and any exhibit attached [to the complaint,] . . . the exhibit prevails." <u>S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC</u>, 713 F.3d 175, 182 (4th Cir. 2013) (second alteration in original) (citing <u>Fayetteville Investors v. Commercial Builders, Inc.</u>, 936 F.2d 1462, 1465 (4th Cir. 1991)).

However, courts, including this Court, have recognized an important exception to that general rule when the document attached to the complaint contains "unilateral statements" made by a defendant. Although the Fourth Circuit has not expressly recognized such an exception to the general rule, the Sixth Circuit has held:

> Where a plaintiff attaches to the complaint a document containing unilateral statements made by a defendant, where a conflict exists between those statements and the plaintiff's allegations in the complaint, and where the attached document does not itself form the basis for the allegations, Rule 10(c) does not require a plaintiff to adopt every word within the exhibits as

17

> true for purposes of pleading simply because the
> documents were attached to the complaint to support an
> alleged fact.

Jones v. City of Cincinnati, 521 F.3d 555, 561 (6th Cir. 2008)

(internal quotation marks and citation omitted); see also N.

Ind. Gun & Outdoor Shows, Inc. v. City of South Bend, 163 F.3d

449, 455 (7th Cir. 1998) ("Rather than accepting every word in a

unilateral writing by a defendant and attached by a plaintiff to

a complaint as true, it is necessary to consider why a plaintiff

attached the documents, who authored the documents, and the

reliability of the documents."). Thus, in certain instances

where the plaintiff's claim is not based upon the exhibit, it is

appropriate to consider the factual allegations in the

complaint, rather than statements in an exhibit attached to the

complaint, even if those allegations contradict statements in

the exhibit.

In Jones v. City of Cincinnati, the decedent's

representatives and relatives brought a Section 1983 action

against a city after members of its police department allegedly

killed the decedent through the use of excessive force when

holding down the decedent. See 521 F.3d at 557-58. The

plaintiffs attached, as exhibits to the complaint, transcripts

of interviews of police officers by a "Cincinnati Citizen

Complaint Authority investigator" and excerpts from "the Citizen

Complaint Authority report on the incident." Id. at 561.

Although the defendants had argued that the court was required to accept as true the statements in the exhibits that cast doubt on the allegations in the complaint, the <u>Jones</u> court held that the statements in the exhibits <u>did not</u> control over the complaint's factual allegations. <u>Id.</u> According to the court,

> we treat the exhibit as an allegation that the officers made the statements in the transcripts and we treat that allegation as true. Thus, we accept as true that on June 24, 2004 Officer Pike said that no officer put weight on Jones's back during the handcuffing process. . . . We do not accept as true, however, that Officer Pike's statement is accurate or true; this is a question of credibility and weight of the evidence that is not before a court considering a motion to dismiss.

<u>Id.</u> Therefore, <u>Jones</u> stands for the proposition that a court need not accept as true for all purposes a defendant's unilateral statement in an exhibit attached to a complaint.

In <u>Pinder v. Knorowski</u>, this Court applied the reasoning in <u>Jones</u> and concluded that statements in an exhibit did not trump the factual allegations in a complaint. 660 F. Supp. 2d 726, 736-37 (E.D. Va. 2009) (Morgan, J.). The plaintiff in <u>Pinder</u> brought a Section 1983 action against multiple police officers alleging, among other things, that the officers had conducted an unlawful search of his residence and unlawfully seized him. <u>See id.</u> at 729-30. The plaintiff attached as an exhibit to his complaint an affidavit of one of the officers that contained statements that contradicted the factual allegations in the

19

complaint. See id. at 736. In holding that the affidavit did not control over the factual allegations of the complaint, the Pinder court recognized that "no Fourth Circuit cases have considered this particular issue" but determined that the Jones court's reasoning was sound. Id. at 736-37. The court emphasized that the plaintiff had not attached the affidavit "to prove the facts in the affidavit," especially because the plaintiff alleged "within the complaint that the contents of the affidavit are not to be trusted." Id. at 737. Therefore, the Court did not assume the truth of the factual statements contained in the affidavit because it would "make little sense" to take the "untested self-serving assertions" in the affidavit "as true and use them to dismiss [the] [p]laintiff's claim." Id.

In this case, to some extent, Exhibit D to the Complaint contradicts the factual allegations in the Complaint. For example, the Complaint alleges that Plaintiff "at no time reached into a console or glove box, into his coat, or made any other furtive motion." ¶ 38. On the other hand, on page 6 of the PSD Annual Report 2012, the report states that a police officer fired her weapon into Plaintiff's vehicle "based upon the furtive movement of the offender" and that "another Detective saw the furtive movement." Compl. Ex. D at 6.

Pinder and Jones indicate that it would "make little sense" to accept as true the account of the December 12, 2012 incident contained in Exhibit D.   Exhibit D is a unilateral statement made by the PSD of its findings concerning the December 12, 2012 incident, similar to the affidavit and report in Jones and the police officer's affidavit in Pinder.   The gravamen of Plaintiff's claim based on policy and custom is that the City is liable for the alleged deprivation of Plaintiff's constitutional rights because its police department's process for investigating police officers' use of force was inadequate.   Just as the Pinder court refused to accept statements in an exhibit as true because the complaint contained allegations that those statements were false, 660 F. Supp. 2d at 737, this Court will not assume the truth of the statements in Exhibit D regarding the December 12, 2012 incident because that Exhibit is the product of an investigative process that Plaintiff alleges is inadequate, e.g., Compl. ¶ 69.   It would "make little sense" to conclude that the factual statements in the PSD Annual Report 2012 controlled over the allegations in the Complaint when the central allegations of the Complaint challenge the sufficiency of the investigative process by which the PSD generated the report.   Accordingly, the Court will resolve any inconsistency between the exhibits to the Complaint and the factual allegations in the Complaint itself in favor of the Complaint.

The Court will treat Exhibit D as an allegation that the PSD made a report concerning the December 12, 2012 incident in its annual report; however, the Court will not accept as true the factual account of the incident stated in the report.

### B. Monell Liability

Next, the Court sets forth the general requirements that Plaintiff must establish to state a plausible claim against the City under Section 1983. The Court will then address, in turn, each of Plaintiff's theories of liability.

Title 42 U.S.C. § 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress
> . . . .

Thus, "to establish liability under § 1983, a plaintiff must show that the defendant acting under color of law, violated the plaintiff's federal constitutional or statutory rights, and thereby caused injury." Woodson v. City of Richmond, 2 F. Supp. 3d 804 (E.D. Va. 2014) (citing Brown v. Mitchell, 308 F. Supp. 2d 682, 692 (E.D. Va. 2004)). "Section 1983 is a vehicle for the vindication of pre-existing federal rights rather than an

independent source of substantive rights." Id. (citing Brown, 308 F. Supp. 2d at 692).

Municipalities are "persons" under Section 1983 and, therefore, "[a] municipality or other local government may be liable under [Section 1983] if the governmental body itself 'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation." Connick v. Thompson, 131 S. Ct. 1350, 1359 (2011) (citing Monell v. New York City Dep't of Social Servs., 436 U.S. 658, 692 (1978)). However, "under § 1983 local governments are responsible only for 'their own illegal acts.'" Id. (emphasis in original) (quoting Pembaur v. Cincinnati, 475 U.S. 469, 479 (1986)). Municipalities are not vicariously liable under § 1983 for their employees' actions under a theory of respondeat superior. See id. (citations omitted).

For Plaintiff to impose liability upon the City, Plaintiff must show that the City deprived him of a constitutional right "'through an official policy or custom.'" Lytle v. Doyle, 326 F.3d 463, 471 (4th Cir. 2003) (quoting Carter v. Morris, 164 F.3d 215, 218 (4th Cir. 1999)).

> A policy or custom for which a municipality may be
> held liable can arise in four ways: (1) through an
> express policy, such as a written ordinance or
> regulation; (2) through the decisions of a person with
> final policymaking authority; (3) through an omission,
> such as a failure to properly train officers, that
> 'manifest[s] deliberate indifference to the rights of

> citizens'; or (4) through a practice that is so
> 'persistent and widespread' as to constitute a 'custom
> or usage with the force of law.'

Id. (alteration in original) (quoting Carter, 164 F.3d at 217).

Therefore, a plaintiff can rely on those four possible theories

of liability to attribute a deprivation of constitutional rights

to a municipality. However,

> it is not enough for a § 1983 plaintiff merely to
> identify conduct properly attributable to the
> municipality. The plaintiff must also demonstrate
> that, through its deliberate conduct, the municipality
> was the "moving force" behind the injury alleged. That
> is, a plaintiff must show that the municipal action
> was taken with the requisite degree of culpability and
> must demonstrate a direct causal link between the
> municipal action and the deprivation of federal
> rights.

Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown, 520 U.S. 397, 404

(1997) (emphasis in original). Here, Plaintiff contends that

the City is liable on each of the four grounds stated in Lytle.

As an initial matter, to state a municipal liability claim

under any of the theories set forth in Lytle, Plaintiff must

first allege sufficient factual matter to demonstrate that he

has been deprived of his constitutional rights. In this case,

the alleged deprivation of Plaintiff's constitutional rights

occurred when the Individual Defendants shot Plaintiff during

the December 12, 2012 stop. Thus, to state a Section 1983 claim

against the City, as a threshold matter, Plaintiff must allege

facts sufficient to raise, beyond a speculative level, a claim

that at least one of the Individual Defendants deprived him of his constitutional rights.

City Defendants have presented little argument contesting liability on the basis that Plaintiff suffered no underlying deprivation of his constitutional rights for which the City might be held liable. City Defendants only discuss the legal significance of the Individual Defendants' conduct in the portion of their Rebuttal Memorandum concerning Plaintiff's failure-to-train claim. See Rebuttal Mem. Supp. Mot. to Dismiss at 6. There, City Defendants defend the conduct of the Individual Defendants by asserting that:

> The Complaint, taken as a whole and including the Exhibits, on which the Court is allowed to rely, does not allege a mere unarmed man who is stopped by police and subsequently shot. The Complaint alleges the circumstances of (1) a known felon, (2) wanted for possession of a firearm, (3) reaching furtively, (4) putting his vehicle in motion while an officer was reaching into the vehicle trying to apprehend him, and (5) being shot while he was still behind the wheel of the vehicle because a fellow officer was concerned about the safety of the reaching officer.

Id. (citing Compl. Ex. D). However, for the reasons stated above, to the extent City Defendants rely on the facts contained in Exhibit D to contradict the allegations in the Complaint, the Court considers the Complaint controlling.

Although City Defendants have, at best, only indirectly argued that Plaintiff has failed to state a claim against the City because the Individual Defendants did not violate

25

Plaintiff's constitutional rights, assuming, arguendo, that Defendants contested the issue, the Complaint contains sufficient factual matter to state a plausible claim that at least one of the Individual Defendants deprived Plaintiff of his constitutional rights. Assuming the truth of the allegations in the Complaint, the actions of the Individual Defendants in shooting Plaintiff, even though he was unarmed and made no furtive movements presenting a potential threat to the officers, present a plausible claim that the officers unlawfully seized Plaintiff in violation of his rights under the Fourth Amendment to the United States Constitution. See Henry v. Purnell, 652 F.3d 524, 531-32 (4th Cir. 2011) (en banc) (quoting Tennessee v. Garner, 471 U.S. 1, 3 (1985)) (stating that "[a] police officer who shoots a fleeing suspect without 'probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others' violates that suspect's Fourth Amendment rights."); cf. Lee v. City of Richmond, Civil Action No. 3:12cv471, 2013 WL 1155590, at *3 (E.D. Va. Mar. 19, 2013) (unpublished) (concluding, in a municipal liability Section 1983 action where the plaintiff had alleged that police officers shot plaintiff's decedent while he was unarmed, that "[e]ven the most cursory examination of the Amended Complaint illustrates that [the plaintiff] has alleged a legally sufficient § 1983 Fourth Amendment Claim, for excessive

and deadly force, against [the individual officers]).
Therefore, for the purposes of resolving this motion, Plaintiff
has sufficiently alleged that the conduct of at least one of the
Individual Defendants deprived him of his constitutional rights.
Thus, for Plaintiff to state a claim against the City, Plaintiff
must only show that the City, with the required level of
culpability, caused that deprivation of his rights.

### 1. Express Policy

Plaintiff first contends that an express policy of the City
deprived him of his constitutional rights. However, Plaintiff
has failed to allege sufficient factual matter to establish
beyond a speculative level that any deprivation of Plaintiff's
rights was attributable to an express policy of the City.

A municipality may deprive a plaintiff of his
constitutional rights, triggering Monell liability under Section
1983, through an express policy embodied in written ordinances
or regulations. The Fourth Circuit has described the United
States Supreme Court's jurisprudence as characterizing "the
enactment of legislation as the prototypical conduct that can
give rise to liability under Monell." Berkley v. Common Council
of City of Charleston, 63 F.3d 295, 299 (4th Cir. 1995) (en
banc). Indeed, "[t]he easiest cases in which to find an
official policy are those cases, like Monell itself, where the
local government formally and as a body makes a decision which,

27

when executed by the body or by its employees, gives rise to a constitutional violation." Sheldon N. Nahmod, <u>Civil Rights and Civil Liberties Litigation</u> § 6:8 (4th ed. 2014).

The Supreme Court has held that it is improper for courts to apply "a heightened pleading standard," beyond that of Federal Rule of Civil Procedure 8, in Section 1983 municipal liability cases. See <u>Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit</u>, 507 U.S. 163, 168-69 (1993). However, to survive a motion to dismiss, the Complaint must allege factual matter beyond "a formulaic recitation of the elements of a cause of action" and "'naked assertion[s]' devoid of 'further factual enhancement.'" <u>Iqbal</u>, 556 U.S. at 678 (quoting <u>Twombly</u>, 550 U.S. at 556-57); <u>see also</u> <u>Francis v. Giacomelli</u>, 588 F.3d 186, 192-93 (4th Cir. 2009).

Under <u>Iqbal</u>, even applying the liberal pleading standard of Federal Rule of Civil Procedure 8, Plaintiff's allegations concerning an express policy of violating Plaintiff's constitutional rights do not state a claim upon which relief can be granted. In this case, Plaintiff appears to argue that the City has an express policy that violated Plaintiff's constitutional rights. According to Plaintiff, "[i]t is the longstanding deliberately indifferent . . . policy of the Defendant City . . . to permit officers to use excessive force against individuals when such use is unnecessary and

28

unjustified."   Compl. ¶ 67.   However, Plaintiff's allegation that the City has a policy of permitting officers to use excessive force is conclusory because it is a "naked assertion devoid of further factual enhancement." Iqbal, 560 U.S. at 678. Other than the mere assertion that the City has a policy of permitting officers to use excessive force, the Complaint contains no factual matter suggesting that the City, through its City Council, enacted any formal policy that deprived Plaintiff of his constitutional rights.   Cf. Spell v. McDaniel, 824 F.2d 1380, 1388 (4th Cir. 1987) (stating that "where there is no official statement respecting specific police conduct, it will be difficult if not impossible to imply an official municipal policy directly authorizing conduct at odds with federal and state constitutions and laws").   The facts alleged in the Complaint do not establish, beyond the speculative level, that the City formally promulgated an express policy that caused the Individual Defendants to violate Plaintiff's constitutional rights.   Accordingly, the Court will **GRANT** City Defendants' motion with respect to any claim that the City had an express policy that violated Plaintiff's constitutional rights.

## 2. Decisions of a Person with Final Policy Making Authority

Plaintiff next argues that the City deprived Plaintiff of his constitutional rights through the decisions of the PSD because the City delegated its final policymaking authority to

Chiefs Fox and Myers, who then delegated that authority to the PSD. See Compl. ¶¶ 13, 15, 18, 70. According to Plaintiff, the PSD made decisions with the City's final policy making authority with respect to "reviewing police misconduct." Id. ¶ 70. Thus, to the extent the PSD failed to adequately establish a "mechanism for internal investigation and punishment of excessive use of force," Plaintiff contends that failure is attributable to the City as the decision of a person with final policymaking authority. See Pl.'s Br. Opp'n Defs.' Mot. to Dismiss at 5-6.

As stated above, under Monell a municipality may violate a Plaintiff's constitutional rights "through the decisions of a person with final policymaking authority." Lytle, 326 F.3d at 471. "To qualify as a 'final policymaking official,' a municipal official must have the responsibility and authority to implement final municipal policy with respect to a particular course of action." Riddick v. Sch. Bd. of City of Portsmouth, 238 F.3d 518, 523 (4th Cir. 2000) (emphasis in original) (quoting Pembaur, 475 U.S. at 482-83). "Authority to make municipal policy may be granted directly by a legislative enactment or may be delegated by an official who possesses such authority." Pembaur, 475 U.S. at 483. "The question of who possesses final policymaking authority is one of state law." Riddick, 238 F.3d at 523 (citing Pembaur, 475 U.S. at 483).

"[T]o determine which officials possess final policymaking authority for the allegedly unconstitutional action in question, we must look to 'the relevant legal materials, including state and local positive law, as well as custom or usage having the force of law.'" Id. (quoting Jett v. Dallas Independent Sch. Dist., 491 U.S. 701, 737 (1988)).

Here, Plaintiff has sufficiently alleged that the decisions of the PSD qualify as the decision of a person with "the responsibility and authority to implement final municipal policy with respect to" reviewing police misconduct. City Defendants apparently do not contest that the PSD exercised final policymaking authority because they do not challenge Plaintiff's assertion to that effect. However, a survey of state and local positive law and the allegations in the complaint concerning delegation indicate that, for the purposes of resolving this motion, Plaintiff has sufficiently alleged that the PSD exercised final policymaking authority with respect to reviewing the use of excessive force.

State law vests the authority to establish a police force in the City and provides that a locality's chief law-enforcement officer is its chief of police. Under the Code of Virginia,

> Any locality may, by ordinance, provide for the organization of its authorized police forces. Such forces shall include a chief of police, and such officers and other personnel as appropriate. When a locality provides for a police department, the chief

of police shall be the chief law-enforcement officer
of that locality.

Va. Code Ann. § 15.2-1701.   Thus, under state law, a City has
the authority to establish a police force and, if it does so,
the chief of police is that force's chief law-enforcement
officer.   This suggests that Chiefs Fox and Myers had final
policy making authority over the Police Department as the City's
chief law-enforcement officers.   Therefore, state positive law
supports Plaintiff's allegations that Chiefs Fox and Myers had
final policy making authority.

Under local positive law, it appears that the City has
vested the chief of police with authority to make policy with
respect to the Police Department.   According to the Newport News
City Code:

> (a) There is hereby established a police department,
> which shall consist of the chief of police, to be
> appointed by the city manager, and such other officers
> and employees organized into such bureaus, divisions
> and other units as may be provided by ordinance or by
> orders or directives consistent therewith.
> (b) The chief of police shall be the head of the
> police department and shall, under the supervision of
> the city manager, have general management and control
> of the several bureaus, divisions and other units of
> the department. . . .

Newport News, Va., Code § 32-1.   Subsection (b) of Newport News
City Code § 32-1 suggests that the chief of police has final
policy making authority over the police department because the
chief is "the head of the police department" and "shall have

32

general management and control" over the bureaus and divisions of the Police Department.[4] See id.; Johnson v. City of Richmond, No. Civ.A.3:04 cv 340, 2005 WL 1793778, at *4 (E.D. Va. June 24, 2005) (unpublished) (finding that a chief of police had final policy making authority over the "conduct of police activity" because the city code granted the chief "general management and control of the department of police"); cf. Fenner v. Dawes, 748 F. Supp. 404, 408 (E.D. Va. 1990) ("the delegation of law enforcement policy-making authority to a police chief will permit a police chief to make policy attributable to the municipality."). Accordingly, local positive law supports Plaintiff's allegation that the City delegated its policy making authority over the police department to the chief of police.

Taken together with state and local positive law, Plaintiff's allegation that Chiefs Fox and Myers delegated their policy making authority over reviewing police misconduct to the

---

[4] Arguably, the fact that the chief of police exercises authority "under the supervision of the City Manager" might indicate that the City Manager has final policy making authority over the police department. However, in light of City Defendants' failure to dispute the authority of the chief of police and the absence of any indication within the Newport News City Code of the manner in which the City Manager exercises supervision over the chief of police, cf. Lytle, 326 F.3d at 472 (holding that a city manager was the final policymaker for purposes of section 1983 liability because of provisions in the Norfolk City Code requiring that "all orders, rules, and regulations applicable to the entire police department must be approved by the City Manager" other than some police "standard operating procedures"), the Court concludes that local positive law supports Plaintiff's allegation that Chiefs Fox and Myers had final policy making authority over the Police Department.

PSD suffices to establish, for the purposes of this motion, that the PSD exercises final policy making authority over reviewing police misconduct.    In addition to state and local positive law, the Court may consider "custom or usage having the force of law" in determining whether a person exercises the final policy making authority of a municipality.    See Riddick, 238 F.3d at 523.    Here, Plaintiff has, in a somewhat conclusory fashion, alleged that Chiefs Fox and Myers delegated their authority to the PSD.    Compl. ¶¶ 13, 15.    However, in addition to those allegations, the 2012 PSD Annual Report further states that the PSD prepared it in accordance with the "Police Department's policy (ADM – 270)" which "requires that an annual summary of complaints be presented to the Chief of Police."    Compl. Ex. D at 1.    The statement in the report allows the Court to reasonably infer that the chief of police has delegated final policy making authority regarding review of the use of force by police officers to the PSD because the existence of an official policy requiring the PSD to report a summary of complaints to the chief of police suggests that the chief of police has delegated the authority to investigate complaints to the PSD, otherwise, the PSD would have no reason to report to the chief of police and no basis for the information contained in the report.    Accordingly, given the state and local positive law and factual allegations in the Complaint and Exhibit D, the Court

34

concludes that Plaintiff has sufficiently alleged that the PSD exercised, through delegation from Chiefs Fox and Myers, the City's final policy making authority over reviewing police officers' use of force.

Importantly, however, even though Plaintiff has alleged sufficient facts to attribute to the City the actions of the PSD in reviewing police officers' use of force, Plaintiff must also allege facts establishing that the decision reflects deliberate indifference to the risk that a deprivation of constitutional rights will follow the decision and a direct causal link between the City's conduct, through the PSD, and the alleged deprivation of federal rights.   Riddick, 238 F.3d at 524; see also Bryan Cnty., 520 U.S. at 404.   Thus, Plaintiff must also present sufficient facts to establish the elements of culpability—through deliberate indifference—and causation.

With respect to final-policy-maker-decision liability, the principle dispute between City Defendants and Plaintiff concerns the causation element and, therefore, the Court will consider causation before addressing culpability.   Plaintiff alleges, though less than clearly, that the PSD's official actions through the "mechanism for internal investigation and punishment of excessive use of force" caused the deprivation of Plaintiff's rights because an inadequate mechanism for investigation provides no "accountability or deterrent for misconduct."   Pl.'s

35

Br. Opp'n Defs.' Mot. to Dismiss at 5. Drawing all reasonable inferences in a light most favorable to Plaintiff, Plaintiff in essence argues that the PSD is responsible for the alleged deprivation of Plaintiff's rights because the PSD's failure to adequately investigate claims that officers used excessive force encouraged "disregard for the federal rights of citizens," Compl. ¶ 71, which, inferentially, caused the Individual Defendants to use excessive force against Plaintiff. In response, City Defendants contend that a "failure to investigate or take disciplinary action following a subject incident cannot support a claim of municipal liability[] because an after-the-fact inadequate investigation . . . could not have been the legal cause of [P]laintiff's injury." Dfs.' Rebuttal Mem. Supp. Mot. to Dismiss at 4.

Where a plaintiff has alleged that a municipality's failure to adequately investigate his claim that officers used excessive force against him caused those officers to use excessive force against him, the temporal reality of linear time prevents a plaintiff from relying solely on the deprivation of his rights to establish municipal liability based on a failure to investigate claims of excessive force. Cf. Cordova v. Aragon, 569 F.3d 1183, 1194 (10th Cir. 2009) (emphasis in original) (stating in a failure-to-discipline case that "basic princip[les] of linear time prevent us from seeing how conduct

that occurs <u>after</u> the alleged violation could have somehow caused that violation"). Therefore, "[i]t is well settled that, in a failure to investigate case, municipal liability cannot be predicated on a single incident." <u>Lee v. City of Richmond</u>, Civil Action No. 3:12cv471, 2013 WL 1155590, at *8 (E.D. Va. Mar. 19, 2013) (unpublished) (citing <u>Byrd v. District of Columbia</u>, 297 F. Supp. 2d 136, 139 (D.D.C. 2003)). As one court has stated, "[i]t is logically impossible for an investigation that post-dates the alleged constitutional deprivation to have caused that deprivation." <u>Casey v. City of Fed. Heights</u>, Civil No. 05-CV01013-REB-KLM, 2008 WL 2559443, at *2 (D. Colo. June 23, 2008) (unpublished); <u>see also Lavender v. City of Roanoke Sheriff's Office</u>, 826 F. Supp. 2d 928 (W.D. Va. 2011) ("though [defendant's] alleged failure to investigate the alleged excessive use of force against [plaintiff] possibly might serve as grist should another excessive force claim arise in the future, it could not have resulted in the constitutional deprivation [plaintiff] alleges . . . the antecedent excessive use of force . . . ."). Rather, a plaintiff must "show that [the municipality] failed to investigate previous incidents before a court could conclude the [officers] at the time of the shooting believed a municipal [policy] allowed them to violate [Plaintiff's] rights with impunity." <u>Mettler v. Whitledge</u>, 165 F.3d 1197, 1205 (8th Cir. 1999).

Here, though it is a close case, Plaintiff's allegations concerning the PSD's failure to investigate the use of excessive force against him are sufficient to survive City Defendants' motion to dismiss. Although many of Plaintiff's allegations are conclusory, his allegations concerning the use of force against another individual, Robert L. Harper—though somewhat skeletal—sufficiently raise an inference that the failure of the PSD to investigate prior uses of excessive force caused the alleged deprivation of Plaintiff's rights.

The Complaint contains a number of allegations that, alone, do not present sufficient factual matter to state a claim against the City based on the PSD's alleged failure to adequately investigate the incident involving Plaintiff. For example, Plaintiff alleges that: the City "encouraged, tolerated, ratified, and acquiesced to a dangerous environment of police brutality by . . . failing to adequately punish unconstitutional uses of force [and] by ongoingly failing to properly or neutrally investigate citizen complaints of excessive force," Compl. ¶ 66; the PSD "routinely ratifies the malicious collusive conduct and unconstitutional actions of police by . . . ignoring serious complaints of excessive force," id. ¶ 68; and the decisions of the PSD "with respect to reviewing police misconduct" "encourage[ed] lawlessness and disregard for the federal rights of citizens," id. ¶¶ 71-72.

Those allegations are conclusory because they do not contain any factual enhancement creating a reasonable inference that the allegations are true. See, e.g., Ross v. Prince George's County, Civil Action No. DKC 11-1984, 2012 WL 1204087, at *9 (D. Md. Apr. 10, 2012) (unpublished) (finding allegations that a county "consistently failed to investigate, discipline, and record acts of excessive force, thereby demonstrating gross disregard for its citizens' Fourth Amendment Rights . . ." to be conclusory and inadequate to state a claim for failure to investigate).

However, Plaintiff enhances those conclusory allegations concerning the PSD's allegedly routine failure to investigate excessive force claims with factual allegations concerning another use of force.   In Paragraph 73 of the Complaint, Plaintiff alleges that in 2007 officers of the Police Department shot and killed an unarmed man, Robert L. Harper, "during an attempt by six officers to arrest him after his bond was revoked."   Although Plaintiff does not allege any facts regarding whether the PSD adequately investigated that incident, the alleged facts concerning the Harper incident along with the broader allegations concerning routine failure to investigate excessive force claims permit a reasonable inference that the PSD failed to adequately investigate the Harper incident.

Further, Plaintiff alleges that the PSD "in the period before and since this event, has unfounded other complaints of excessive force by law enforcement." Compl. ¶ 72. Though that allegation is somewhat ambiguous, it further suggests, at least implicitly, that the PSD has failed to adequately investigate claims of the use of excessive force. Cf. Owens v. Baltimore City State's Attorneys Office, __ F.3d __, 2014 WL 4723803, at *17-18 (4th Cir. Sept. 24, 2014) (published) (holding that allegations of "reported and unreported cases from the period of time before and during the events complained of establish[ing] that the [defendant] had a custom, policy, or practice of knowingly and repeatedly [violating constitutional rights]" were non-conclusory). Accordingly, through the factual allegations raising an inference that the PSD failed to adequately investigate the Harper incident and the allegations of other unfounded complaints of excessive force, Plaintiff has presented sufficient factual matter to raise a plausible claim that the City caused the deprivation of Plaintiff's rights through the actions of the PSD in failing to adequately investigate claims concerning the use of excessive force, including Plaintiff's incident.

Although City Defendants' briefs present little argument concerning whether the historical actions of the PSD demonstrate deliberate indifference to a risk that violation of Plaintiff's

40

constitutional rights will follow from the PSD's decisions,[5] after considering the law and allegations, the Court concludes that Plaintiff has alleged sufficient factual matter regarding culpability to survive City Defendants' motion to dismiss. As the Supreme Court has stated, "'deliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." Connick, 131 S. Ct. at 1360. Allegations that show that the decision maker was "aware of, and acquiesced in, a pattern of constitutional violations'" are sufficient to establish deliberate indifference. Gallimore v. Henrico Cnty. Sch. Bd., __ F. Supp. 2d __, 2014 WL 3867557, at *3 (E.D. Va. Aug. 5, 2014) (published) (quoting City of Canton v. Harris, 489 U.S. 378, 397 (1989)). Here, the same allegations that present sufficient factual matter to demonstrate causation—the allegations that raise a reasonable inference that the PSD had failed to investigate other, prior claims of excessive force—are sufficient, for the purposes of this motion, to allege a pattern of constitutional violations. Furthermore, those allegations,

---

[5] With respect to Plaintiff's claim attributing liability to the City on the basis of the PSD's decisions in investigating excessive force claims, City Defendants focus their argument on the causation element in Riddick, rather than on culpability. See Mem. Supp. Mot. to Dismiss at 8; Rebuttal Mem. Supp. Mot. to Dismiss at 4. However, to state a claim against the City, Plaintiff must demonstrate both causation and culpability. See Riddick, 238 F.3d at 524 (citations omitted). Thus, the Court also considers whether the Complaint alleges sufficient facts to demonstrate culpability.

when coupled with the allegation that the PSD acted knowingly, see Compl. ¶ 65, also sufficiently establish, at least for the purpose of surviving a motion to dismiss, that the PSD was "aware of" those violations and "acquiesced in them," see Gallimore, 2014 WL 3867557, at *3. Thus, Plaintiff has alleged sufficient facts to establish beyond the speculative level that the PSD acted with deliberate indifference. The Court, therefore, will **DENY** City Defendants' motion with respect to the claim of municipal liability based on the PSD's decisions as a policy maker with final authority.

### 3. Omission Manifesting Deliberate Indifference to Plaintiff's Rights

Plaintiff also alleges that City Defendants are liable for the alleged deprivation of Plaintiff's rights through two omissions manifesting deliberate indifference to Plaintiff's rights, namely, failure to train Newport News police officers in the constitutional limitations on the use of force and failure to supervise officers' use of force. Next, the Court will consider, in turn, each of these theories of liability.

### a. Failure to Train

As stated above, a city can be held liable under Section 1983 based on its failure to adequately train its employees. However, the Supreme Court has underscored the narrowness of liability for failure to train. According to the Court,

42

> In limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983. A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train.

Connick, 131 S. Ct. at 1359 (citing Oklahoma City v. Tuttle, 471 U.S. 808, 822–823 (1985) (plurality opinion)). To establish liability for failure to train, a plaintiff must show:

> (1) [that] the subordinates actually violated the plaintiff's constitutional or statutory rights; (2) [that] the supervisor failed to train properly the subordinates thus illustrating a 'deliberate indifference' to the rights of the persons with whom the subordinates come into contact; and (3) [that] this failure to train actually caused the subordinates to violate the plaintiff's rights.

Gallimore, 2014 WL 3867557, at *3 (alterations in original) (citations omitted).

In this case, for the reasons stated above, the Court has determined that Plaintiff has alleged sufficient facts to raise a plausible claim that at least one of the Individual Defendants deprived Plaintiff of his constitutional rights, satisfying the first element stated in Gallimore. Thus, the primary issues regarding failure-to-train liability concern the second and third element.

With respect to the deliberate indifference element, the Supreme Court has emphasized that the "deliberate indifference" requirement imposes a high standard.

> [D]eliberate indifference is a stringent standard of
> fault, requiring proof that a municipal actor
> disregarded a known or obvious consequence of his
> action. Thus, when city policymakers are on actual or
> constructive notice that a particular omission in
> their training program causes city employees to
> violate citizens' constitutional rights, the city may
> be deemed deliberately indifferent if the policymakers
> choose to retain that program. The city's policy of
> inaction in light of notice that its program will
> cause constitutional violations is the functional
> equivalent of a decision by the city itself to violate
> the Constitution. A less stringent standard of fault
> for a failure-to-train claim would result in de facto
> respondeat superior liability on municipalities.

Connick, 131 S. Ct. at 1360 (internal citations and quotation marks omitted). A Plaintiff can allege the deliberate indifference element in two ways. First, "'[m]unicipal liability for a failure to train may be proper where it can be shown that policymakers were aware of, and acquiesced in, a pattern of constitutional violations.'" Gallimore, 2014 WL 3867557, at *3 (quoting City of Canton v. Harris, 489 U.S. 378, 397 (1989)). Second, "'a failure to train claim also can be based on a supervisory power's failure to train its employees concerning an obvious constitutional duty that the particular employees are certain to face.'" Id. (quoting Brown v. Mitchell, 308 F. Supp. 2d 682, 701 (E.D. Va. 2004)). However, to impose liability under the second method, the Plaintiff must establish that "the underlying constitutional right is quite clear and is one that the subordinates reasonably can be expected to confront with some regularity." Id. (quoting Brown,

308 F. Supp. 2d at 704-05).  Plaintiff relies primarily on the second method of proving the deliberate indifference element; however, the Court will consider the extent to which Plaintiff has alleged facts sufficient to establish deliberate indifference under either method.

Plaintiff has not alleged sufficient factual matter to establish deliberate indifference by showing that policymakers had an "awareness of, and acquiesced in, a pattern of constitutional violations." As one court has recognized in the context of failure-to-train claims based on an alleged pattern of police-involved shootings, the validity of such a claim "depends upon the existence of a pattern of excessive force events involving the shooting of citizens by police in the course of performing their official duties." Johnson v. City of Richmond, No. Civ.A.3:04 cv 340, 2005 WL 1793778, at *6 (E.D. Va. June 24, 2005) (unpublished).  Thus, to establish deliberate indifference based on a pattern of constitutional violations, Plaintiff must allege facts to establish the existence of "a pattern of incidents sufficiently similar to each other, or to the one in [the plaintiff's] case."  Id. at *7; see also Connick, 131 S. Ct. at 1360 (finding that the Plaintiff had not shown deliberate indifference through a pattern of similar constitutional violations because the incidents cited by the plaintiff were not "similar to the violation at issue" so as to

"put [the defendant] on notice that specific training was necessary to avoid this constitutional violation.").

Here, Plaintiff's allegations concerning a pattern of constitutional violations are conclusory, at best. Throughout the Complaint, Plaintiff alleges that Defendants have failed to properly train their officers and that such failure showed deliberate indifference to Plaintiff's constitutional rights. See Compl. ¶¶ 67, 118. However, alone, those allegations are not sufficient to raise a plausible claim that the City "knew of, and acquiesced in, a pattern of constitutional violations," Gallimore, 2014 WL 3867557, at *3, because such allegations are conclusory, see Lee, 2013 WL 1155590, at *7 (holding that allegations that "training was inadequate . . . the inadequate training constituted deliberate indifference . . . and the risk of constitutional injury as a result of such deliberate indifference . . . is very obvious" were a formulaic recitation of the elements of a cause of action and were mere conclusions that did not, without additional facts, state a claim for failure-to-train liability).

Importantly, Plaintiff's additional factual allegation that the City's police officers "shot and killed unarmed Robert L. Harper during an attempt by six officers to arrest him" does not sufficiently establish, beyond the speculative level, that the City knew of, and acquiesced in, a pattern of constitutional

46

violations similar to the alleged December 12, 2012 violation of Plaintiff's rights. Plaintiff has not connected the use of force against Harper to any failure on the part of the City to train its officers. Indeed, Plaintiff has not even alleged that the use of force against Harper was excessive. In short, Plaintiff has not shown that the incident involving Harper was part of a pattern of constitutional violations of which Plaintiff's incident, or any other incident, was a part. Accordingly, without any further factual allegations to bolster Plaintiff's conclusory allegations that the City failed to train its officers in a manner demonstrating deliberate indifference, the Court concludes that Plaintiff has failed to allege sufficient facts to state the element of deliberate indifference through acquiescence in a pattern of constitutional violations.

Nevertheless, even absent allegations of a pattern of constitutional deprivations, Plaintiff can also satisfy the deliberate indifference element through allegations that the City failed to train its officers "concerning an obvious constitutional duty that the particular employees are certain to face." Gallimore 2014 WL 3867557, at *3. The paradigmatic example of "an obvious constitutional duty" that "particular employees are certain to face" is that of a police officer's duty concerning the use of deadly force. In City of Canton v. Harris, the Supreme Court specifically noted that

47

> city policymakers know to a moral certainty that their
> police officers will be required to arrest fleeing
> felons. The city has armed its officers with firearms,
> in part to allow them to accomplish this task. Thus,
> the need to train officers in the constitutional
> limitations on the use of deadly force . . . can be
> said to be "so obvious," that failure to do so could
> properly be characterized as "deliberate indifference"
> to constitutional rights.

Canton, 489 U.S. at 391 n. 10. Likewise, this Court has recognized that "the failure to provide adequate training in the use of deadly force constitutes deliberate indifference because officers are certain to face the need to apply such force and the consequences of doing so are permanent and severe." Johnson, 2005 WL 1793778, at *8.

In this case, the Complaint contains sufficient allegations to plausibly establish the element of deliberate indifference based on the City's alleged failure to train its police officers concerning an obvious constitutional duty the officers are certain to face. Plaintiff has alleged that "the need for specialized training . . . is so obvious" and the "inadequacy of the training . . . is so likely to result in the violation of constitutional and federal rights . . ." that the "failure to provide such specialized training . . . is deliberately indifferent to those rights such as those described herein" because of the "duties and responsibilities of those police officers that participate in arrests." Compl. ¶ 119. Thus, read in a light most favorable to Plaintiff, he alleges that the

police officers that participate in arrests require special training because of the obvious risk, absent such training, that an armed officer might unconstitutionally seize a suspect, yet, the City has not provided them with such specialized training. In light of the Supreme Court's statement in Canton about the obvious need to train armed officers tasked with arresting fleeing felons, for the purposes of surviving this motion to dismiss, Plaintiff has alleged a sufficient factual basis to satisfy the deliberate indifference element of a failure-to-train claim through his allegations concerning an obvious constitutional duty the City's officers were certain to face.

Finally, to state a failure-to-train claim, Plaintiff must also establish that the City's failure to train its officers actually caused the deprivation of Plaintiff's rights. Gallimore, 2014 WL 3867557, at *3. That is, Plaintiff must show that the City's "'failure to correct the known practice [was] such as to make the specific violation almost bound to happen, sooner or later, rather than merely likely to happen in the long run.'" Johnson, 2005 WL 1793778, at *10 (internal quotation marks omitted) (quoting Spell v. McDaniel, 824 F.2d 1380, 1391 (4th Cir. 1987)).

In this instance, Plaintiff's allegations establish beyond the speculative level that the City's alleged failure to correct the Police Department's training deficiencies made an incident

49

such as the December 12, 2012 incident "bound to happen, sooner or later." "Indeed, that is a principal reason that failure to properly train officers in the use of force is one of those narrow circumstances in which municipal liability can be found even in the absence of a pattern of alleged violations."  Id. In other words, the same factor that renders a failure-to-train claim viable in the deadly force context absent a pattern of constitutional violations—that officers have an obvious constitutional duty regarding the use of deadly force and are certain to face the need to apply such force—also indicates that the failure to train officers in the appropriate constitutional limits on the use of deadly force makes the deprivation of constitutional rights "almost bound to happen, sooner or later." Therefore, Plaintiff has alleged sufficient factual matter to raise a plausible right to relief against the City based on the City's alleged failure to train its officers in the constitutional limits on the use of deadly force.  The Court will **DENY** City Defendants' motion with respect to Plaintiff's failure-to-train claim.

### b. Failure to Supervise

In addition to alleging that the City deprived Plaintiff of his constitutional rights through its failure to train its employees, Plaintiff also appears to assert, as an independent basis for liability, that the City deprived him of his

50

constitutional rights by failing to supervise its officers. Thus, Plaintiff appears to argue that the City is liable as a supervisor for the purported misconduct of the police officers that it supervises. As an initial matter, it is not clear that the Fourth Circuit has established that supervisory liability principles apply to municipalities, although other courts have suggested that municipalities might be liable for failure to supervise an officer. See Liebe v. Norton, 157 F.3d 574, 579 (8th Cir. 1998); see also Martin A. Schwartz, Section 1983 Litigation Claims & Defenses § 7.18[B][1] (4th ed. 2014). However, even applying those principles to the City, Plaintiff has failed to allege sufficient factual matter to raise a plausible right to relief against the City on the basis of a failure to supervise.

To state a claim for supervisory liability under Section 1983, a Plaintiff must allege facts establishing three elements. A plaintiff must show:

> "(1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like *662 the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices, and (3) that there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff."

Willis v. Blevins, 966 F. Supp. 2d 646, 661-62 (E.D. Va. 2013) (quoting Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994)). Thus, to state a supervisory liability claim, Plaintiff must establish three elements: knowledge, deliberate indifference, and causation.[6]

With respect to the knowledge element, Plaintiff must show:

> (1) the supervisor's knowledge of (2) conduct engaged in by a subordinate (3) where the conduct poses a pervasive and unreasonable risk of constitutional injury to the plaintiff. Establishing a pervasive and unreasonable risk of harm requires evidence that the conduct is widespread, or at least has been used on several different occasions and that the conduct engaged in by the subordinate poses an unreasonable risk of harm of constitutional injury.

Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994) (internal quotation marks and citations omitted); see also Willis, 966 F. Supp. 2d at 662.

In this case, Plaintiff's failure-to-supervise claim fails because he has not alleged sufficient factual matter to establish the knowledge element of such a claim. Plaintiff asserts a number of broad allegations regarding the failure-to-

---

[6]The United States Supreme Court's decision in Connick requiring a plaintiff to show deliberate indifference in a failure-to-train claim and its emphasis that "[a] less stringent standard of fault for a failure-to-train claim would result in de facto respondeat superior liability" indicates that the Court must at least require Plaintiff to demonstrate deliberate indifference to state a claim against the City predicated on failure-to-supervise liability. 131 S. Ct. at 1360. Otherwise, the Court would be imposing respondeat superior liability on the City, in contravention of the Court's holding in Monell. See 436 U.S. at 691.

supervise claim. According to Plaintiff, City Defendants "failed to supervise . . . deputies in the appropriate constitutional limits on the use of force, knowing that these members of law enforcement therefore pose a significant risk of injury to the public," Compl. ¶ 67, and "failed to properly . . . supervise [their] officers in a manner amounting to deliberate indifference to the constitutional rights of Plaintiff," Compl. ¶ 118. However, those allegations are conclusory, and insufficient, without more, to raise, beyond the speculative level, Plaintiff's right to relief on the failure-to-supervise claim because they are "naked assertion[s] devoid of further factual enhancement." Iqbal, 560 U.S. at 678; cf. Lee, 2013 WL 1155590, at *7 (holding that allegations that "training was inadequate . . . the inadequate training constituted deliberate indifference . . . and the risk of constitutional injury as a result of such deliberate indifference . . . is very obvious" were a formulaic recitation of the elements of a cause of action and were mere conclusions that did not, without additional facts, state a claim for failure-to-train liability).

None of Plaintiff's allegations present sufficient factual matter to satisfy the sub-elements of the supervisory liability knowledge element as stated in Shaw. Under Shaw, to state a claim for supervisory liability Plaintiff must show that the City had knowledge of conduct by a subordinate that is

"widespread, or at least has been used on several different occasions and that the conduct engaged in by the subordinate poses an unreasonable risk of harm of constitutional injury." 13 F.3d at 799 (citing Slakan v. Porter, 737 F.2d 368, 373-74 (4th Cir. 1984)). Plaintiff has failed to allege such facts for reasons similar to his failure to state a failure-to-train claim based on a pattern of constitutional violations. The only factual allegation suggesting that the alleged violation here—the excessive use of deadly force—occurred on any different occasion, much less "several occasions," see id. at 799, concerns the 2007 shooting of Robert L. Harper, see Compl. ¶ 73. However, Plaintiff has not connected that shooting to the use of force against him in any way, much less alleged that it provided the City with "knowledge that its subordinates [were] engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like Plaintiff." See Shaw, 13 F.3d at 799 (internal quotation marks and citations omitted); cf. Ross, 2012 WL 1204087, at *9 (holding that a plaintiff failed to state a claim based on conclusory allegations that a locality failed to adequately supervise officers in the proper use of force where the complaint "provided no factual allegations of known, widespread conduct by [the locality's employees comparable to that alleged as to [the plaintiff]"). Accordingly, Plaintiff has failed to allege sufficient facts to

state a failure-to-supervise claim against the City and the Court will **GRANT** the City's motion and dismiss Plaintiff's failure-to-supervise claim.

### 4. Custom

As a final theory of municipal liability, Plaintiff contends that the City had a custom that deprived him of his constitutional rights in a similar manner to Plaintiff's final-policy-maker-liability theory. See Pl.'s Br. Opp'n Defs.' Mot. to Dismiss at 9. As stated above, a municipality may violate Section 1983 through an unconstitutional custom or practice; however, "[s]uch a custom 'may arise if a practice is so persistent and widespread and so permanent and well settled as to constitute a custom or usage with the force of law.'" Lytle, 326 F.3d at 473 (quoting Carter, 164 F.3d at 220). To establish custom liability, "[a] plaintiff must point to a 'persistent and widespread practice[] of municipal officials,' the 'duration and frequency' of which indicate that policymakers (1) had actual or constructive knowledge of the conduct, and (2) failed to correct it due to their 'deliberate indifference.'" Owens, 2014 WL 4723803, at *17 (alterations in original) (quoting Spell, 824 F.2d at 1386-91). However, "[b]oth knowledge and indifference can be inferred from the 'extent' of employees' misconduct." Id. (quoting Spell, 824 F.2d at 1391).

In addition, "[i]t is well settled that 'isolated incidents' of unconstitutional conduct by subordinate employees are not sufficient to establish a custom or practice . . . ." Id. (quoting Carter, 164 F.3d at 220). Thus, "there must be 'numerous particular instances' of unconstitutional conduct in order to establish a custom or practice." Id. (quoting Kopf v. Wing, 924 F.2d 265, 269 (4th Cir. 1991)). However, for the purposes of surviving a motion to dismiss, a plaintiff "need not plead the multiple incidents of constitutional violations that may be necessary at later stages to establish the existence of an official policy or custom and causation." Jordan by Jordan v. Jackson, 15 F.3d 333, 339 (4th Cir. 1994) (citations omitted); see also Danielson v. City of Virginia Beach, Civil Action No. 2:11cv253, 2011 WL 3664710, at *2 (E.D. Va. Aug. 19, 2011) (unpublished) (citing Edwards v. City of Goldsboro, 178 F.3d 231, 244-45 (4th Cir. 1999)). Nevertheless, to state a plausible claim, a complaint must contain "'more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.'" Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009) (quoting Twombly, 550 U.S. at 555).

In this case, the factual allegations that sufficiently state a claim predicated on final-policy-maker-decision liability also suffice to raise, beyond the speculative level, Plaintiff's right to relief based on his allegation that the

City had a custom that deprived him of his constitutional rights. Plaintiff's bare assertion that City Defendants "maintained customs . . . amounting to deliberate indifference to the constitutional rights of Plaintiff and of the public," Compl. ¶ 118; see also Compl. ¶¶ 67, 71, 117, is conclusory because it does not contain factual matter that raises a reasonable inference that the City actually maintained such a custom, see Iqbal, 556 U.S. at 663. However, the allegation concerning the shooting of Robert L. Harper in 2007, Compl. ¶ 73, and the broader allegations that the City and PSD routinely failed to adequately investigate excessive force claims, see id. ¶¶ 66, 68, when viewed in a light most favorable to Plaintiff, permit a reasonable inference that the PSD failed to adequately investigate the Harper incident. Moreover, Plaintiff's allegation that the PSD "in the period before and since this event, has unfounded other complaints of excessive force by law enforcement," Compl. ¶ 72, provides additional factual support for Plaintiff's allegation that the City had a custom of failing to adequately investigate claims of excessive force. See Owens, 2014 WL 4723803, at *17-18 (holding that allegations of "reported and unreported cases from the period of time before and during the events complained of establish[ing] that the [defendant] had a custom, policy, or practice of knowingly and repeatedly [violating constitutional rights]" "buttressed [the

plaintiff's] legal conclusion"). Taken together, those allegations, if true, present sufficient factual matter to permit a reasonable inference that City Defendants had a custom of failing to adequately investigate excessive force claims. Therefore, the Court will **DENY** City Defendants' motion to dismiss with regard to Plaintiff's claim that the City deprived him of his constitutional rights through a custom of failing to adequately investigate excessive force claims.

### C. Leave to Amend

Based on the Court's rulings **GRANTING IN PART** City Defendants' motion to dismiss, the Court now considers Plaintiff's request for leave to amend his Complaint. Under Federal Rule of Civil Procedure 15(a):

> (1) A party may amend its pleading once as a matter of course within:(A) 21 days after serving it, or (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier.
> (2) In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires. . . .

Fed. R. Civ. P. 15(a)(1)-(2). In this case, Plaintiff has not filed an amended pleading within twenty one days after City Defendants' Federal Rule of Civil Procedure 12(b)(6) motion. Thus, Plaintiff may only amend his Complaint with the Court's leave. See id.

The text of Federal Rule of Civil Procedure 15(a)(2) requires that the Court "freely give leave [to amend] when justice so requires." Id. "This liberal rule gives effect to the federal policy in favor of resolving cases on their merits instead of disposing of them on technicalities." Laber v. Harvey, 438 F.3d 404, 426 (4th Cir. 2006) (en banc) (citations omitted). After a dismissal under Federal Rule of Civil Procedure 12(b)(6), a court "normally will give plaintiff leave to file an amended complaint" because "[t]he federal rule policy of deciding cases on the basis of the substantive rights involved rather than on technicalities requires that plaintiff be given every opportunity to cure a formal defect in his pleading." Ostrzenski v. Seigel, 177 F.3d 245, 252-53 (4th Cir. 1999) (emphasis omitted). However, "a district court may deny leave to amend if the amendment 'would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would have been futile.'" U.S. ex rel. Nathan v. Takeda Pharm. N. Am., Inc., 707 F.3d 451, 461 (4th Cir. 2013) (quoting Laber, 438 F.3d at 426)).

In this case, City Defendants do not appear to have opposed granting Plaintiff leave to amend his Complaint. Moreover, nothing suggests that an amendment would be prejudicial to the City, that Plaintiff has acted in bad faith, or that the amendment would be futile. Accordingly, the Court will **GRANT**

59

Plaintiff leave to amend his Complaint against City Defendants to cure its defects.

## IV. CONCLUSION

For the reasons stated above, City Defendants' Motion to Dismiss, ECF No. 6, is **GRANTED IN PART** and **DENIED IN PART**. The Court **GRANTS** City Defendants' motion with respect to Plaintiff's claims against Chiefs Fox and Myers and **DISMISSES** those claims. The Court **GRANTS** City Defendants' motion with respect to Plaintiff's claims against the City predicating <u>Monell</u> liability on an express policy and on a failure to supervise. The Court **PROVIDES** Plaintiff with leave to amend the Complaint against the City to cure all defects within twenty one (21) days after the entry of this Opinion and Order. If Plaintiff fails to adequately amend the Complaint within the period prescribed, Plaintiff's express policy and failure-to-supervise claims against the City will be dismissed with prejudice.

The Court **DENIES** City Defendants' motion, ECF No. 6, with respect to Plaintiff's claims against the City predicating <u>Monell</u> liability on the decision of a person with final policy making authority and the City's failure to train its officers in the constitutional limits on the use of deadly force.

The Clerk is **REQUESTED** to send a copy of this Opinion and Order to all counsel of record.

IT IS SO ORDERED.

/s/ _____

Mark S. Davis
UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
March 25, 2015